# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# FORT MYERS DIVISION

QUEST SYSTEMS, LLC, as Trustee of the 16347 Coco Hammock Land Trust,

       Plaintiff,

v.   Case No: 2:21-cv-40-SPC-NPM

DEUTSCHE BANK NATIONAL TRUST COMPANY, as Trustee for American Home Mortgage Assets Trust 2006-2, Mortgage Pass-Through Certificates, Series 2006-2,

       Defendant.
_____/

## **OPINION AND ORDER**[1]

Before the Court is Plaintiff Quest Systems, LLC's Motion for Remand (Doc. 13) and Defendant Deutsche Bank National Trust Company's Motion to Quash Service of Process (Doc. 17). For the following reasons, the Court grants the motion to quash and denies the motions to remand.

---

[1] Disclaimer: Documents hyperlinked to CM/ECF are subject to PACER fees. By using hyperlinks, the Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide, nor does it have any agreements with them. The Court is also not responsible for a hyperlink's availability and functionality, and a failed hyperlink does not affect this Order.

## PROCEDURAL BACKGROUND

This is one of over 25 virtually identical complaints filed across Florida against Deutsche Bank National Trust Company ("DBNTC") by Quest's attorney, Lee Segal.[2] (Doc. 22).[3] In short, the plaintiffs in these lawsuits allege DBNTC's prosecution of foreclosure actions were "fraudulent, illegal, and perjurious" and rendered the rulings void. (Doc. 1-1 at 5). First, the plaintiffs allege DBNTC never legally owned the mortgages it sought to foreclose. (*Id.*) Second, the plaintiffs allege that the beneficiaries of the trust holding the mortgages never authorized the foreclosure suits. (*Id.*) Third, the plaintiffs allege DBNTC's trust license had been revoked so it was illegal for it to act as a trustee to the pooled mortgages. (*Id.*) Thus, the plaintiffs allege, DBNTC engaged in a series of frauds in attempting to collect an unlawful debt, including recording a *lis pendens*, in violation of Florida's Civil Remedies for Criminal Practices Act, Fla. Stat. § 772.101, *et seq*.

The complaints in each case are fundamentally identical except for the quintessential variables of the plaintiff and property. But these facts are virtually irrelevant to the legal claims as currently pled. Indeed, the allegations as to the supposed fraudulent behavior in each of the underlying

---

[2] Mr. Segal signed his filings in federal court as Lior Segal, but as Lee Segal in state court. Mr. Segal's Florida Bar registration information lists his name as Lee Segal, as does his admission to the Middle District of Florida.
[3] This may be a significant under-estimation, as recent filings reference over 50 virtually identical cases. (*See* Case No. 2:21-cv-42-SPC-NPM, Doc. 27).

foreclosure actions is generalized and not case specific. Tellingly threading these complaints together, all but one of the complaints before the undersigned, including those ostensibly filed by attorneys other than Mr. Segal, have the same transposition typos citing non-existent Fla. Stat. § 772.013(1)–(4) and § 772.014, instead of correct citations to Fla. Stat. § 772.103(1)–(4) and § 772.104. (*See* Doc. 3 at 15).[4]

But the complaints themselves are not the only similarity linking these cases. Foreclosure actions necessarily take place in the county where the mortgaged property is located. Nearly every lawsuit filed by Mr. Segal and his colleagues, however, contain the same procedural oddity: they were filed in a separate county from the underlying foreclosure action. The instant lawsuit is the lone exception to the nine cases assigned to the undersigned.

Another pronounced procedural oddity linking these lawsuits is this matter before the Court: service of process. Quest sued in Lee County 20th Judicial Circuit Court on July 17, 2020. Quest served its complaint and summons on "CT CORP" at 28 Liberty Street in New York on July 24, 2020.

---

[4] The undersigned has nine cases involving these claims against either DBNTC or the Bank of New York Mellon: 2:21-cv-9-SPC-NPM, 2:21-cv-37-SPC-NPM, 2:21-cv-38-SPC-NPM, 2:21-cv-39-SPC-NPM, 2:21-cv-40-SPC-NPM, 2:21-cv-42-SPC-NPM, 2:21-cv-47-SPC-NPM, 2:21-cv-66-SPC-NPM, and 2:21-cv-80-SPC-NPM. Seven have transposition errors as to § 772.103. Eight have transposition errors as to § 772.104. The only complaint that contains multiple counts, Case 2:21-cv-47-SPC-NPM, is not internally consistent as to its transposition errors, with Count 1 citing § 772.103 and § 772.104, Count 2 citing § 772.013 and § 772.014, and Count 3 citing § 772.103 and § 772.014. Only one case, 2:21-cv-80-SPC-NPM, appears to correctly cite the statutes invoked.

(Doc. 17-1). On July 27, 2020, CT Corporation System ("CT") sent a letter to Mr. Segal indicating that CT was not the registered agent of DBNTC and would be unable to forward the complaint and summons purportedly served by Levey. (Doc. 17-2).[5]

Quest sought default thrice in state court, ultimately receiving it August 17, 2020. (Doc. 1-3 at 1). Quest then moved for summary judgment after default. (*Id.*) It was granted on September 21, 2020 in the amount of $1,019,370.00. (*Id.*; Doc. 13 at 4). DBNTC appeared on January 14, 2021, moving to quash service. (Doc. 1-6 at 55). DBNTC then removed the matter to federal court based on diversity jurisdiction on January 15, 2021. (Doc. 1).

## MOTION TO REMAND

Multiple motions are before the Court, but Quest's motion to remand must be addressed first given it implicates the Court's jurisdiction. *See Univ. of S. Alabama v. Am. Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999) ("[A] federal court must remand for lack of subject matter jurisdiction notwithstanding the presence of other motions pending before the court."). Quest argues that DBNTC's notice of removal was untimely because its complaint was served on July 24, 2020, but removal was not effected until

---

[5] CT had sent Mr. Segal at least 21 letters indicating the same—that CT is not the registered agent for DBNTC and could not accept service on its behalf—between July 15 and October 27, 2020. (Doc. 17-5).

January 15, 2021, well beyond the 30-day time limit. DBNTC responds that removal was timely because the complaint has never been properly served and notice of removal was filed shortly after DBNTC first learned of this case.

A notice of removal "shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." 28 U.S.C. § 1446(b)(1). A "defendant's time to remove is triggered by simultaneous service of the summons and complaint, or receipt of the complaint, 'through service or otherwise,' after and apart from service of the summons, but not by mere receipt of the complaint unattended by any formal service." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347-48 (1999). "Even where a defendant has actual notice of the filing of a suit, service of process is ineffective where it does not comply with the rules of service." *Hunt v. Nationstar Mortg., LLC*, 782 F. App'x 762, 764 (11th Cir. 2019) (per curiam). "In actions removed from state court, the sufficiency of service of process prior to removal is determined by the law of the state from which the action was removed." *Rentz v. Swift Transp. Co., Inc.*, 185 F.R.D. 693, 696 (M.D. Ga. 1998); *Usatorres v. Marina Mercante Nicaraguenses, S.A.*, 768 F.2d 1285, 1286 n.1 (11th Cir. 1985).

Here, the parties cannot reasonably dispute that DBNTC's notice of removal was untimely if service was proper, and timely if service was

improper. Thus, resolution of the motion to remand turns entirely on resolution of DBNTC's motion to quash.

## MOTION TO QUASH

Florida law sets specific requirements for serving financial institutions. Fla. Stat. § 48.092. Financial institutions may designate a registered agent for service of process within the state, but it is not required. Fla. Stat. § 655.0201(2). If the financial institution has no registered agent, "service may be made to any officer, director, or business agent of the financial institution at its principal place of business or at any other branch, office, or place of business in the state." Fla. Stat. § 655.0201(3)(a).

DBNTC is a national banking organization formed under the laws of the United States and is authorized by the United States Department of Treasury to transact in the business of banking and to act as a fiduciary. (Doc. 17-4). DBNTC's main office is in Los Angeles, California and its primary trust operations office is in Santa Ana, California. (Doc. 17-3 at 3; *see* Doc. 17-4).[6] DBNTC does not have a branch, office, or place of business in Florida. (Doc. 17-3 at 3). Like many Deutsche Bank-affiliated entities (*see* Doc. 10-1 at 1;

---

[6] A cursory search on the United States Securities and Exchange Commission's website confirms that DBNTC is located in California. U.S. Sec. and Exch. Comm'n, *Deutsche Bank National Trust Co CIK#: 0001020242*, https://www.sec.gov/cgi-bin/browse-edgar?CIK=1020242 (last accessed March 1, 2021).

6

Doc. 11-1 at 1), DBNTC maintained an office at 60 Wall Street to accept service at that address prior to the COVID-19 pandemic. (*see* Doc. 11-1).

Since DBNTC has no registered agent, branch, office, or place of business in Florida, Quest must have served DBNTC in California to comply with Florida's law of service. Quest asserts it first sought to serve Deutsche Bank at 60 Wall Street, New York, NY, but was instructed to serve CT at 28 Liberty Street, New York, NY. This is where the defect in Quest's service begins. Quest equated DBNTC—Deutsche Bank National Trust Company—with Deutsche Bank. Regardless of the connection between these two entities (*see* Doc. 8) (corporate disclosure statement), Quest has not proved that service upon some other Deutsche Bank entity effectuates valid service upon DBNTC. *See Amtrust N. Am. v. Sennebogen Maschinenfabrij GmbH*, 2020 WL 5441407, at *11 (M.D. Fla. Aug. 25, 2020) (summons for lawsuit against German company Sennebogen GmbH served upon its American affiliate, Sennebogen LLC, was ineffectual), *R&R adopted by* 2020 WL 5423203, at *1 (M.D. Fla. Sept. 10, 2020). Nor can Quest prove that attempted service upon Deutsche Bank's purported agent, CT, renders valid service upon the separate and distinct entity of DBNTC.

Quest seeks to save its service defect by arguing about the pre- and post-COVID-19 service norms at 60 Wall Street. Levey is familiar with serving "various Deutsche Bank entities" at 60 Wall Street. (Doc. 10-1 at 1). Before

7

the COVID-19 pandemic, Levey and his agents would approach the security desk for service, then the security personnel would contact the appropriate Deutsche Bank employee who came to the lobby to accept service. (*Id.* at 2). When the COVID-19 pandemic began, 60 Wall Street became vacant and, at some point, a paper sign was taped up that read: "Please direct all service to: . . . CT Corporation System Registered Agent, 28 Liberty Street." (*Id.* at 2, 6-9). This paper sign was updated in early December 2020 to read: "Please direct all Deutsche Bank service EXCEPT for service [on] Deutsche Bank National Trust Company to: . . . CT Corporation." (*Id.* at 5, 10). But this misses the mark. Florida law requires service upon DBNTC in California. That DBNTC accepted service at 60 Wall Street before March 2020 as a courtesy does not codify a change to statutes governing service. Moreover, DBNTC had not designated CT as its registered agent (Doc. 17-3 at 3-4), and, given the many identical lawsuits handled by Quest's attorney, Quest had ample notice that CT was not a registered agent of DBNTC and could not accept service on its behalf. Service here was defective and must be quashed.

Florida's service statutes are strictly enforced. *Shurman v. Atl. Mortg. & Inv. Corp.*, 795 So. 2d 952, 954 (Fla. 2001). If a party fails to comply with Florida's service requirements, subsequent judgments are voidable. *Floyd v. Fed. Nat'l Mortg. Ass'n*, 704 So. 2d 1110, 1112 (Fla. Dist. Ct. App. 1998). DBNTC was never served. Instead, Quest served a purported agent of a non-

8

party. This service is so defective that it amounted to no notice whatsoever to DBNTC of the proceedings. The improper service necessitates a finding of good cause to void the default judgment. *Id.*; Fed. R. Civ. P. 55(c) (permitting court to set aside entry of default for good cause). The irony here is palpable: Quest failed to appreciate the separate corporate identities of DBNTC and Deutsche Bank where its complaint asserts a blurring of mortgage owners and mortgage servicers caused its damages. The continued, knowingly invalid service on non-party, non-agent CT of lawsuits against DBNTC followed by default judgments in state court has the same stink of fraud-upon-the-court that the numerous plaintiffs allege was perpetrated upon them. Quest will not be afforded a set of rules apart from DBNTC.

Because the Court finds service was defective here, it follows that DBNTC's removal to federal court was timely. DBNTC learned of the lawsuit and promptly removed it within the 30-day time limit. Quest's motion to remand is denied.

## CONCLUSION

Service here was defective and DBNTC received no notice of the lawsuit. As soon as DBNTC learned of the state court proceeding, it appeared and removed this matter to federal court. That removal was timely and appropriate. Until Quest serves DBNTC, the Court lacks jurisdiction over it. The Court will allow 30 days for Quest to properly serve DBNTC. Given the

service irregularities in this lawsuit and the related lawsuits, if Quest fails to effectuate service, the Court will dismiss this matter with prejudice.

Accordingly, it is now **ORDERED:**

Plaintiff Quest Systems, LLC's Motion for Remand (Doc. 13) is **DENIED**.

Defendant Deutsche Bank National Trust Company's Motion to Quash Service of Process (Doc. 17) is **GRANTED**.  Service is QUASHED and the default entered against Deutsche Bank National Trust Company in state court is VACATED.

Plaintiff Quest Systems, LLC must serve Defendant Deutsche Bank National Trust Company within 30 days of this Order.  Failure to comply will result in the Court dismissing this matter with prejudice.

**DONE** and **ORDERED** in Fort Myers, Florida on March 1, 2021.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  All Parties of Record